IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Criminal Action No.: 6:14-cr-00035-JMC-1 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Garnett Radcliff Campbell, Jr., | ) | |
| also known as | ) | |
| Yeshuah B Al Nina El, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

This matter is before the court on *Pro se* Defendant Garnett Radcliff Campbell, Jr., also known as Yeshuah B Al Nina El's ("Defendant") Notice of Dismissal (hereinafter "Motion"), which the court construes as a Motion to Dismiss Reinstated Indictment.[1] (ECF No. 155.) In this Motion, Defendant also seeks damages resulting from alleged violations of his liberty. After careful consideration, the court **DENIES** Defendant's Motion.

## I. PROCEDURAL BACKGROUND

On January 14, 2014, a Federal Grand Jury returned a three (3) count Indictment against Defendant for passing "false and fictitious instruments" in violation of 18 U.S.C. § 514 (a)(2). (ECF No. 1.) On February 7, 2014, Defendant was arrested in Southern New York. (ECF No. 9.) On March 4, 2014, Defendant entered a plea of not guilty. (ECF No. 12.) On June 19, 2014, the court issued an Emergency Order requesting that Defendant undergo a mental health evaluation to

---

1. Although Defendant fails to cite any Federal Rule of Criminal Procedure in his Motion, the court interprets his Notice of Dismissal as a Motion to Dismiss Reinstated Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(2).

1

determine if he suffered from mental incompetency and appreciated the nature and quality or the wrongfulness of his acts. (ECF No. 31 at 2 (citing 18 U.S.C. §§ 4241, 4242, and 4247 ).) On October 2, 2014, the Federal Bureau of Prisons issued a report advising the court that Defendant does not suffer from a severe mental disease or defect and possesses the ability to understand the nature of his criminal proceedings. (ECF No. 35 at 1.)

On December 23, 2014, Defendant entered a Nolo Contendere plea to count one of the Indictment. (ECF No. 64.) On January 26, 2015, Defendant filed a Motion to Withdraw his Guilty Plea because he allegedly entered a Nolo Contendere plea under threat, duress, and coercion. (ECF No. 73 at 1.) On January 30, 2015, the U.S. Government ("Government") filed a response explaining that Defendant failed to demonstrate a fair and just reason for withdrawing his plea. (ECF No. 78.) On February 6, 2015, Defendant filed an "Affidavit (Writ Ordering Protection)" requesting "a Federal Order of Protection against" certain persons employed by the District Court of South Carolina, United States Department of Justice, and Federal Public Defender's Office. (ECF No. 82.) Defendant alleges that these persons engaged in vindictive prosecution and attempted to "denationalize" him. (ECF No. 82-1.) The court denied Defendant's Motion for Protective Order because he failed to provide any factual or legal basis. (ECF No. 84.) On February, 12, 2015, the court denied Defendant's Motion to Withdraw his Plea of Guilty, ruling that he did not provide any legitimate reason to withdraw his plea. (ECF No. 86 at 5.)

On March 2, 2015, the court sentenced Defendant to time served with no period of supervision , a payment of $16,335.77 in restitution, and a $100.00 special assessment (ECF No. 94), with the amended judgment (ECF No. 98) being entered on March 4, 2015. On March 10, 2015, Defendant filed a motion with the United States Court of Appeals for the Fourth Circuit ("Fourth

Circuit") to withdraw his Nolo Contendere plea. (ECF No. 99.) On appeal, the Government requested that Defendant's conviction be vacated because the court failed to comply with Fed. R. Crim. P. 11. (ECF No. 121.) On March 17, 2016, the Fourth Circuit granted the motion to vacate, ruling that Defendant's guilty plea was not entered into freely, knowingly and voluntary. (ECF Nos. 121, 122.) The Fourth Circuit vacated Defendant's conviction and sentence, and remanded Defendant's proceedings to this court. (*Id*.)

Because the case was remanded to the district court for further proceedings, on May, 2, 2016, the court ordered the issuance of a warrant for Defendant pursuant to the reinstated Indictment. (ECF Nos. 129, 130.) On February 28, 2017, Defendant was arrested by Anderson County Sheriff's Office of Anderson, South Carolina ("Anderson County"). (ECF No. 134.)

On May 2, 2017, Defendant filed this Motion to Dismiss Reinstated Indictment. On May 11, 2017, the Government filed a response stating that Defendant's Motion should be denied because he failed to demonstrate any prosecutorial or government misconduct. (ECF No. 157.)

On May 15, 2017, a hearing was held on Defendant's Motion. (ECF No. 158.) During this hearing, the court inquired whether Defendant would like to present any oral argument in support of his Motion. However, Defendant declined to do so, preferring to stand on his Motion. (ECF No. 166 at 2-3.) The Government argued that Defendant did not show its prosecution was vindictive and/or selective. (*Id*. at 5-6.) After this hearing, the court informed the parties it will issue a written Order on Defendant's Motion. (ECF No. 158.)

## II. LEGAL STANDARD

A dismissal of an indictment is an extraordinary remedy, which the U.S. Supreme Court has characterized as "drastic." *United States v. Morrison*, 449 U.S. 361, 367 (1981). A "presumption of

3

regularity" is attached to all grand jury proceedings. *United States v. Alvarado*, 840 F.3d 184, 189 (4th Cir. 2016) (brackets omitted) (quoting *United States v. Bros. Constr. Co. of Ohio*, 219 F.3d 300, 314 (4th Cir. 2000)).

To ensure grand jury independence, federal courts have very limited supervisory authority over grand jury proceedings. The court may exercise its supervisory authority to dismiss a grand jury indictment based upon prosecutorial misconduct where the misconduct "amounts to a violation of one of those few, clear rules which were carefully drafted and approved by [the United States Supreme Court] and by Congress to ensure the integrity of the grand jury's functions." *United States v. Williams*, 504 U.S. 36, 46 (1992) (internal citations and quotation marks omitted). Such clear rules include, *inter alia*, behavioral standards for prosecutors regarding procedures for granting witness immunity, criminalization of subornation of perjury, and the use of unlawful intercepted communications. *See id.* at n.6 (citing 18 U.S.C. §§ 6002, 6003, 1622, 2515 and describing other Federal Rules of Civil Procedure and statutes set forth in the United States Code governing grand jury activities and the boundaries of prosecutorial conduct related thereto). Indeed, the court should approach any request to dismiss an indictment with caution and with a balanced view of the many interests involved. *See United States v. Payner*, 447 U.S. 727, 737 (1980).

### III. DISCUSSION

Defendant asserts that the court should dismiss the reinstated Indictment based on allegations that (1) he was vindictively prosecuted after his guilty plea withdrawal (2) he was kidnapped by Anderson County officials, resulting in selective prosecution, and (3) he was subjected to extreme threats, duress, threat of unlawful imprisonment, coercion, and "legal violence" made by the State

of South Carolina ("State") and federal government officials. (ECF No. 155-2.) The court will address Defendant's allegations below.

A. <u>Vindictive Prosecution</u>

Defendant appears to allege that the reinstatement of his original Indictment constitutes vindictive prosecution. Pursuant to 18 U.S.C. § 3296, the Government may reinstate Defendant's original Indictment. 18 U.S.C. § 3296 provides as follows:

> (a) In general. – Notwithstanding any other provision of this chapter, any counts of an indictment ... that are dismissed pursuant to a plea agreement shall be reinstated by the District Court if –
>     (1) the counts sought to be reinstated were originally filed within the applicable limitations period;
>     (2) the counts were dismissed pursuant to a plea agreement approved by the District Court under which the defendant pled guilty to other charges;
>     (3) the guilty plea was subsequently vacated on the motion of the defendant; and
>     (4) the United States moves to reinstate the dismissed counts within 60 days of the date on the order vacating the plea becomes final.

Defendant's allegations of prosecutorial vindictiveness do not support a dismissal of his Indictment. As provided above, under 18 U.S.C. § 3296, the Government had sixty days (60) to move to reinstate the counts of the Indictment that were dismissed pursuant to Defendant's involuntary guilty plea. Defendant filed a motion with the Fourth Circuit to withdraw his Nolo Contendere plea. (ECF No. 99.) On March 17, 2016, the Fourth Circuit vacated Defendant's plea, sentence, and conviction on the basis that his guilty plea was not voluntary, and remanded the case to the district court for further proceedings. (ECF Nos. 121, 122.) On May, 2, 2016, the court ordered the issuance of a warrant for Defendant. (ECF Nos. 129, 130.) The court finds that the

reinstatement of Defendant's original Indictment was timely after the Fourth Circuit vacated his conviction and remanded his criminal proceedings to this court.

As to Defendant's contentions with respect to circumstances relating to the reinstatement of his criminal charges, an indictment may be dismissed based on either: (1) "outrageous government conduct," if the conduct rises to the level of a due process violation; or (2) "conduct [that] does not rise to the level of a due process violation," but that the court determines justifies dismissal under the court's "supervisory powers." *United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008).

A prosecution designed solely to punish a defendant for exercising a valid legal right violates due process. *Blackledge v. Perry*, 417 U.S. 21, 25-26 (1974). Defendant must show that the prosecution was initiated in order to punish the defendant for the exercise of a legal right. *Id.* To establish actual vindictiveness, a defendant must show, "through objective evidence that (1) the prosecutor acted with genuine animus toward the defendant and; (2) the defendant would not have been prosecuted but for that animus." *United States v. Jackson*, 327 F.3d 273, 294 (4th Cir. 2003). If the defendant cannot prove an improper motive with direct evidence, he or she may present evidence of circumstances from which an improper vindictive motive may be presumed. *Id.*

Here, Defendant must establish his burden of prosecutorial vindictiveness in initiating and/or pursuing a criminal action against him under 18 U.S.C. § 514 (a) (2). The Government explained that the reinstated Indictment imposes the original charges filed against Defendant. (ECF No. 157 at 5-7.) "[J]udicial intrusion into prosecutorial decisions is justified only when the Constitution requires it." *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996) (quoting *Batchelder*, 442, U.S. at 125 (1979)); *see also Heckler v. Chaney*, 470 U.S. 821, 832 (1985). "So long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision

whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). The court finds that Defendant's original Indictment was from the grand jury proceedings, which was merely reinstated after the Fourth Circuit vacated his plea, conviction, and sentence, and remanded his criminal proceedings to this court. Thus, Defendant's vindictive prosecution claim is wholly unsupported.

B. <u>Selective Prosecution</u>

Second, Defendant appears to allege that his arrest by Anderson County officials constitutes kidnapping, resulting in selective prosecution. (ECF No. 155-2 at 2.)

> Under 18 U.S.C. § 1201(a):
>> federal kidnapping is defined as when a person kidnaps, abducts, or carries away and holds for ransom or otherwise any person ... when ... the person is willfully transported in interstate ... commerce, regardless of whether the person was alive when transported across a State boundary if the person was alive when the transportation began."
>> 18 U.S.C. § 1201(a).

Defendant apparently contends that his arrest by Anderson County officials is within the statutory definition of kidnapping. Defendant appears to argue that his "kidnapping" commenced when he was allegedly unlawfully arrested at his residence in Powderville, near the State of South Carolina by three armed police officers pursuant to an F.B.I. arrest warrant. (*Id*. at 155-2 at 2-3.) Defendant further alleges he was detained for about sixteen hours. *(Id.)* The Government rejects Defendant's claims, explaining that he was arrested pursuant to his reinstated Indictment. (ECF Nos. 129, 130.) The original Indictment was returned by a grand jury, but it was reinstated upon the Fourth Circuit's judgment to withdraw Defendant's guilty plea. (ECF No. 157 at 3-7.) The court finds that the

7

Government's execution of Defendant's arrest pursuant to a reinstated Indictment does not provide a basis for Defendant's claim of a substantive "kidnapping" offense.

As to Defendant's claim for selective prosecution, the Government has broad discretion in determining who to prosecute. *Wayte v. United States*, 470 U.S. 598, 607 (1985). The discretion is, of course, "subject to constitutional constraint." *Wayte*, 470 U.S. at 608. The decision to prosecute may not be based on "unjustifiable" factors such as race, religion, or another arbitrary classification. *United States v. Armstrong*, 517 U.S. 456, 464-65 (1996). However, absent a substantial showing to the contrary, prosecutions will be presumed to be motivated only by proper considerations. *United States v. Hastings*, 126 F.3d 310, 313 (4th Cir. 1997).

To overcome the presumption of regularity in a selective prosecution claim, a defendant "must demonstrate that the federal prosecution policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 465. In racially biased prosecutions, a defendant must establish "both (1) that similarly situated individuals of a different race were not prosecuted, and (2) that the decision to prosecute was invidious or in bad faith." *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996).

In this Motion, Defendant merely alleges, without any supporting evidence, that he was a victim of selective prosecution during his arrest by Anderson County officials. The court records do not reflect any evidence that Defendant was prosecuted on the basis of an "unjustifiable" factor or for exercising one of his fundamental rights. The court finds that Defendant cannot support his claim of selective prosecution.

C. <u>Duress Defense</u>

Third, Defendant argues that he was under extreme duress, threat of unlawful imprisonment, coercion, and "legal violence" when certain persons informed him that he needed to complete and sign transactions unknown to him. (ECF No. 155-2 at 6-7.) Defendant claims that several employees of the State and federal government conspired to cause him to execute "security instruments." *(Id.)* To establish a duress defense, Defendant must show that (i) he faced an unlawful and imminent threat of death to serious bodily injury, (ii) that he did not recklessly expose himself in a situation, in which he was forced to engage in criminal conduct, (iii) that he had no reasonable legal alternative to either avoid the threat or to engage in criminal conduct, and (iv) that he had a direct causal relationship between the criminal action and avoidance of the threatened harm. *United States v. Crittendon*, 883 F.2d 326, 330 (4th Cir. 1989).

Rule 12 permits pre-trial resolution of a motion to dismiss an indictment only when "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 60 (1969). These issues cannot be resolved in Defendant's pre-trial Motion because it would require the court to hold evidentiary hearings. *United States v. Knox*, 396 U.S. 77, 84 (1969) (holding that a "duress" defense could not be considered on a pre-trial motion to dismiss); *United States v. Doe*, 63 F.3d 121, 125 (2d Cir. 1995) (holding that a pre-trial motion to dismiss could not hinge on defendant's claim that he engaged in criminal transactions with public authority). Accordingly, the court finds that Defendant's assertion of a duress defense cannot be raised in his pre-trial Motion because it goes to facts that should be decided at trial.

D. Court's Jurisdiction

Defendant appears to argue that the court lacks jurisdiction over him based on his citizenship of "Amexem/ Al Mauricanos/ American." (ECF No. 155-2 at 9.) Defendant attaches an "Affidavit" attesting to his citizenship of "Amexem/ Al Mauricanos/ American." (*Id*.) Defendant apparently supports his assertion with certain regulations and constitutions titled "Treaty of Peace and Friendship 1786-87, the Constitution of the united [sic] States of America (organic), UN Declaration on the Rights of Indigenous Peoples, Free Moorish-American Zodiac Constitution: (Zodiac Constitution and Birthrights of the Moorish Americans) being Ali, Bey, El Dey and Al), Article two (2), paragraphs two (2), and United States Republic: Department of Justice: Moorish American Credentials: AA 222141-Truth A-1." (ECF No. 155-2 at 1-5.)

Defendant apparently contends that his status as a "Amexem/ Al Mauricanos/ American" exempts him from the jurisdiction of this court. Even if Defendant showed that he renounced his United States Citizenship, his alleged status as a "Amexem/ Al Mauricanos/ American" does not exempt him from facing criminal charges that occurred in the State. "Neither the citizenship nor the heritage of a defendant constitutes a key ingredient to a . . . court's jurisdiction in criminal prosecutions . . . ." *United States v. White*, 480 F. App'x 193, 194 (4th Cir. 2012). As already ruled upon by the court in a prior order dated December 2, 2014 (ECF No. 52), the district court has jurisdiction over offenses against laws of the United States in criminal prosecutions and personal jurisdiction over any defendant brought before it on a federal indictment, regardless of a defendant's consent. *Id*.

Furthermore, the "Treaty of Peace and Friendship" provides that citizens of each county shall be held safe by the other. *El Ameen Bey v. Stumpf*, 825 F. 2d 537, 558 (2011). There is no

10

provision in the "Treaty of Peace and Friendship" indicating that the United States does not have jurisdiction over a person within its jurisdiction. *Stumpf*, 825 F. 2d at 558 (holding that Treaty of Peace and Friendship has no impact on jurisdiction of courts).

Finally, Defendant appears to cite to the Clearfield Doctrine (ECF No. 155-1) in order to demonstrate that the United States lack jurisdiction over him. In *Clearfield*, the United States issued a check through the Federal Reserve Bank of Philadelphia in the amount of $24.20 for services rendered to the Works Progress Administration. *Clearfield Trust Co. v. U.S.*, 318 U.S. 363, 364 (1943). The intended recipient never received the check. *Id.* The check was inexplicably received by an unknown person who misrepresented himself, and endorsed the check to J.C. Penney Co. in exchange for merchandise and money. *Id.* at 365. The intended recipient never authorized the endorsement nor did he participate in the proceeds of the check. *Id.* J.C. Penney Co. endorsed the check over to the Clearfield Trust Co., which accepted it and endorsed it as follows: 'Pay to the order of Federal Reserve Bank of Philadelphia, Prior Endorsements Guaranteed.' *Id.* Clearfield Trust Co. collected the check from the United States through the Federal Reserve Bank of Philadelphia and paid the full amount thereof to J. C. Penney Co. *Id.* The intended recipient notified Works Progress Administration that he had not received the check, and later executed an affidavit alleging that the endorsement of his name on the check was forgery. *Id.* Approximately two months later, the Clearfield Trust Co., was notified of the alleged forgery, and the United States made its first request for reimbursement on or about seven months later. *Id.*

The United States later brought an action against the Clearfield Trust Company to recover the amount of the check based on the express guaranty of prior endorsements made by the Clearfield Trust Co. *Id.* at 366. The district court held that "the rights of the parties were to be determined by

the law of Pennsylvania and that since the United States unreasonably delayed in giving notice of the forgery to the Clearfield Trust Co., it was barred from recovery." *Id.* The Court of Appeals reversed, and the U.S. Supreme Court affirmed, and stated that the "rights and duties of the United States on commercial paper which it issues are governed by federal rather than local law," because "when the United States disburses its funds or pays its debts, it is exercising a constitutional function or power." *Id.* In this case, the authority to issue the check derived from the Constitution and was not dependent on state law. The Court admits that at times it has applied state law, when deciding the applicable federal rule, but the application of state law was inappropriate in *Clearfield. Id.* at 367. Because the United States issues commercial paper on a large scale, and transactions with regard to that paper will often occur in several states, it is unsuitable to leave the United States subject to uncertainty should state law be applied. *Id.*

In the present matter, Defendant improperly applies the Clearfield Doctrine to support his contention that the court lacks jurisdiction over him. Defendant relies on supplemental resources that were not written to influence the law, and that have no relevance to the facts in this case. He asserts that governments, acting as a private citizen, have no standing to prosecute criminal law. However, this assertion is legally incorrect. As such, Defendant has failed to show that his Motion is within the general rule of the Clearfield Doctrine. Thus, Defendant fails to demonstrate his alleged status as an "Amexem/ Al Mauricanos/American" and that the constitutions and regulations he cites exempts him from jurisdiction of this court.

## IV. CONCLUSION

The court considers Defendant's Motion only for alleged governmental misconduct pursuant to Fed. R. Crim. P. 12. Other allegations, even if meritorious, would not provide Defendant any relief

under this Motion. As to Defendant's request for damages, Defendant has stated no basis for relief of damages under the Federal Rules of Criminal Procedure and has not provided any appropriate request for relief of damages. Having considered the memoranda filed by the parties and the record currently before the court, the court **DENIES** Defendant's Notice of Dismissal (ECF No. 155) of his original Indictment.

    **IT IS SO ORDERED.**

J. Michelle Childs
United States District Judge

July 10, 2017
Columbia, South Carolina